# NOBLE H. CREAGER *vs.* ALCAEUS HOOPER,
## MAYOR OF BALTIMORE.

*Mandamus—Demurrer—Inconsistent Allegations—Appeal—Proof of Averments—Title to Public Office—Existence of Municipal Ordinance a Question of Law—Remanding Cause for Trial When Judgment is Affirmed.*

A demurrer to the answer to a petition for a *mandamus* was overruled and leave given to the petitioner to plead. Upon his declining so to do the petition was dismissed. *Held,* that the order dismissing the petition was a final order, from which an appeal lies.

A petition for a *mandamus* directing the defendant to administer the oath of office to the petitioner, claiming to have been elected City Collector, when the administration of the oath by the defendant is a statutory requirement, presents a case involving the right to a public office and one which is entitled, under Code, Art. 5, sec. 42, to immediate hearing in the Court of Appeals.

Appellant filed a petition for a *mandamus* directing the appellee, Mayor of the city of Baltimore, to administer to the petitioner the oath of office as City Collector. The petition set forth the passage of an ordinance by the City Council under which petitioner was elected as Collector, the veto of the same by the Mayor and the passage of the same over his veto, "receiving the affirmative vote of three-fourths of the members of each branch of the City Council, to-wit, the affirmative vote in the first branch of fifteen members, there being four votes in the negative, and three members of said branch being absent." The answer denied the legality of petitioner's election, and as to some of the averments of the petition it neither admitted nor denied the same. To this answer a demurrer was filed. *Held,* that the effect of the demurrer was to mount up to errors in the petition, and that if, as recited in the petition, the affirmative vote of three-fourths "of the members" was necessary for the passage of the ordinance over the veto, then the ordinance did not receive such vote ; or, if it did receive the vote of three-fourths of the members, then the statement of the vote as contained in the *videlicet* clause is wrong ; and the two allegations being inconsistent, the petition is defective on its face.

The above petition also contained certain allegations of fact regarding the passage of said ordinance. The answer neither admitted nor denied these allegations. *Held,* that the answer was not an ad-

mission of the same, and that affirmative proof was necessary to support them.

In a proceeding by way of *mandamus* against the Mayor of a city he ought to be chargeable with knowledge of the acts of the legislative branch of the city government.

Where upon a petition for a *mandamus* the questions involved concern the passage or existence of a municipal ordinance, the same should be tried by the Court without the intervention of a jury.

The existence or non-existence of a statute is a question of law for the Court, though framed in form as an issue of fact.

Under Code, Art. 5, sec. 20, the Court of Appeals has the power in its discretion to remand a cause to the lower Court for trial upon its merits, although the judgment appealed from is affirmed.

Appeal from an order of the Superior Court of Baltimore City (RITCHIE, J.), which set forth that "the demurrer in this case having been overruled with leave to plead to or traverse the answer, and the petitioner having in open Court declined to plead over or traverse the answer filed by the respondent, it is ordered by the Court here, this 15th day of April, 1896, that the petition herein be and the same is hereby dismissed with costs to the respondent."

The appellant's petition, after reciting the passage by the City Council of an ordinance providing for the election of a City Collector by a convention of both branches of the Council, proceeded as follows :

" 4th. That the said ordinance so passed as set out in paragraph 3rd of this petition, having been duly engrossed, was presented to the said Alcaeus Hooper, Mayor of Baltimore City, for his approval, on the fourth day of March, 1896, but the same was not by him approved as Mayor, and on the thirteenth day of March, 1896, was by him returned to the said First Branch of the City Council, in which the said ordinance had originated, with a communication in writing stating his reasons for his failure and refusal to approve the same ; a copy of which said communication is filed herewith, marked, &c."

" 5th. That on the thirteenth day of March, 1896, at a meeting regularly called and held of both branches of the

said City Council, the said communication of his Honor, the Mayor, was laid before the City Council, and the same having been duly read in accordance with the rules of the said City Council, a motion was duly made and adopted to reconsider the vote of which the said ordinance was passed, and thereupon a motion was duly made that the said ordinance be put upon its passage, the objections of his Honor, the Mayor, to the contrary notwithstanding, and upon roll-call had the said ordinance was passed, receiving the affirmative vote of three-fourths of the members of each branch of the City Council, to-wit, the affirmative vote in the first branch of fifteen members, there being four votes in the negative, and three members of the said branch being absent, and in the second branch the affirmative vote of seven members, there being two votes in the negative and two members of the said branch being absent ; and thereby the said ordinance, notwithstanding the objections of his Honor, the Mayor, became an ordinance of the. " Mayor and City Council of Baltimore."

" 6th. That thereafter, and upon the same day, to-wit, the thirteenth day of March, 1896, in and by.a convention of both branches of the City Council of Baltimore, duly convened, your petitioner, Noble H. Creager, was duly elected " City Collector," in accordance with the provisions of the said ordinance hereinbefore recited, and which said appointment is evidenced and certified by the certificate of notification, signed by Robert H. Welch, the chief clerk of the said convention of both branches of the City Council, and duly received by your petitioner through the mail on Saturday, the fourteenth day of March, 1896 ; which said notification or certificate is herewith filed, &c."

The petition then stated that the petitioner had duly executed a bond and requested the Mayor to administer to him the oath of office as required by Code, Art. 70, sec. 5, which the latter refused to do, and the prayer was for a writ of *mandamus* compelling the administration of the oath.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, ROBERTS, BOYD and RUSSUM, JJ.

*Henry Stockbridge, Jr.*, and *William S. Bryan, Jr.* (with whom was *Daniel L. Brinton* on the brief), for the appellant.

That, when an answer is filed in *mandamus* which does not present a bar to the issuing of the writ, a demurrer is an appropriate method of bringing the matter to the attention of the Court, is conclusively settled in Maryland by a unanimous and overwhelming weight of authority. *Hardcastle* v. *M. & D. R. W. Co.*, 32 Md. 34, 35 ; *Barney* v. *The State*, 42 Md. 490 ; *Dyer* v. *Bayne*, 54 Md. 88 ; *Smoot* v. *Somerville*, 59 Md. 86 ; *Kroh* v. *Smoot*, 62 Md. 175.

Was, then, the answer in this case demurrable ? At common law the return to the writ could not be contradicted in the proceeding for a *mandamus*. If that paper showed a good and sufficient reason for refusing the writ, the only remedy of the relator was to bring an action on the case for a false return. Both on account of the far reaching and conclusive effect of the return, and in order to furnish as adequate a remedy as possible in the suit for a false return, and to prevent the return from being argued to mean one thing when it was used to defeat the *mandamus*, and then claimed to mean something else when an action was brought for the false return, the cardinal rules of common law pleading that all in the previous pleading that is not categorically denied is to be taken as admitted, and that every pleading is to be taken most strongly against the pleader, were applied very rigorously to returns in *mandamus*.

The answer in our statutory *mandamus* takes the place of the common return, and must have the same degree of precision. This is clear first from the language of the statute. It is provided in section 2 of Art. 60 of the Code, that upon the filing of the petition the respondent shall be laid under a rule to show *cause* why a *mandamus* should not issue as prayed. In the next section (sec. 3), the defendant is required to file an answer to such petition *fully setting forth*

all the defences upon which he proposes to rely.    Then so
anxious is the law to have a *mandamus* heard *once for all*
upon its real merits, that in the next section (sec. 4), it is
provided that upon a second application for a *mandamus*, no
matter of defence can be relied on which might have been
relied on in his answer to a previous application.    The fifth
section, then, provides that the petitioner may plead to or
traverse all or any of the material averments set forth in the
answer, and the defendant shall take issue or demur to said
plea or traverse, and that such further proceedings be had
" as if the petitioner had brought an action on the case for
a false return."    But, apart from the argument from the face
of the statute itself, this Court has said that the answer
" stands in the place of the return to the alternative writ
under former practice," and that it is to be held to the same
but no greater degree of certainty.    *Legg* v. *Annapolis*, 42
Md. 222.

Now, applying these rules, does the answer in this case
present any reason why the petition should not be granted ?
If evasive or uncertain, or merely expressing ignorance of
the facts, it is not sufficient.    *High on Extraordinary Legal
Remedies*, sec. 464 ;  14 *Am. & Eng. Encyclopædia of Law*,
p. 231 ;  *Commonwealth* v. *Commissioners*, 32 Pa. St. 218.
The return must *deny the facts* stated in the writ, or it should
show that they are not sufficient in law.    *Wood on Man-
damus*, p. 25.    An allegation in a petition for a *mandamus*
cannot be denied " on information and belief."    The return
must be positive.    *People* v. *Common Council*, 77 N. Y. 511 ;
*People* v. *Norton*, 12 Abb. Pract. Rep. (N. S.), pp. 47–48 ;
*People* v. *Schuyler*, 51 How. Pract. 461.    " Argumentative
inferences in a return, or sworn allegations which are merely
constructive deductions, and which, *if false, are not indict-
able as perjuries*, cannot be treated as presenting distinct
issues of fact.    Respondents are bound to return *plain and
direct answers* to all the material allegations in a writ of *man-
damus*, and *in this light every part of the return is to be judged*.
If a confession and avoidance of a plea of fraud be intended,

all the necessary facts should be distinctly stated, and not left to inference." *Commonwealth* v. *Commissioners*, 37 Pa. St. 237.

The defendant's answer says that he neither admits nor denies a fact which not only appeared from the journal, a copy of which was before him, but which every intelligent person in Baltimore knew to be true. The above authorities show that no such *shuffling quibble* will be tolerated, and that the respondent must put the allegation in issue in a frank and straightforward manner or must have it taken for true against him.

The defendant has admitted, not by one paragraph alone, but continuously from beginning to end, the passage of the ordinance, referring to it usually under the phraseology, the " attempted passage of the ordinance," but with respect alike to the original ordinance of the 27th of February and the amended ordinance of March 2nd, he seeks to raise the question, which is one purely of law, that the said attempted ordinance was *ultra vires.* (The argument upon the validity of the ordinance is omitted).

*Thomas G. Hayes, City Counsellor,* and *Thomas Ireland Elliott, City Solicitor,* for the appellee.

The appellee will contend : 1. That this appeal cannot be docketed at this term because it is not a case " involving the right or title to public office, but only the performance of a ministerial act by the Mayor of Baltimore City. 2. That the appeal should be dismissed, because, among other reasons, there were no exceptions taken to the order of the Court from which the appeal is taken and no bill of exceptions in the record, and because the dismissal of the petition was occasioned by the act of the appellant in refusing to obey the mandate of the statute, Article 60, section 5, P. G. L., and the order of the Court. 3. The Court was right in overruling the demurrer and also in dismissing petition after refusal on the part of the appellant to plead to or traverse the answer.

There are facts at issue under the pleadings upon which the defence of the appellee depends in his effort to resist the unlawful acts of the City Council. The validity of the claim of the appellant to the office of City Collector directly depends upon whether these acts of the City Council are lawful or unlawful. Hence, to attempt to pass on the merits of this controversy dependent on any of these facts without these issue of facts being first decided by the tribunal which the law and Constitution provides as the triers of these facts, would not only be unlawful, but work the greatest injustice to the appellee, who is endeavoring to uphold what he considers a great public question and one of vital interest to the welfare of the people of Baltimore. The defence is squarely based upon three facts : 1st. The ordinance in question is *ultra vires.* 2d. That said ordinance never received the required vote to pass it over the Mayor's veto. And 3d. That the appellant was never lawfully elected City Collector, and is not, either in fact or law, City Collector. All these questions depend upon what the Council did when it attempted to pass the ordinance in question and elect the appellant. The appellee avers that the ordinance in question was not legally passed, both as to the vote and mode of procedure, and the appellant was never elected in compliance with law.

In the answer in this case it is respectfully submitted that each material averment of fact set out in the petition is in the answer either denied or not admitted, and in the latter case it was the bounden duty of the appellant to prove those facts which were not admitted as much as it was his duty to prove those which were denied, before he could ask or expect the Court to issue the writ as prayed in the petition. " The case must be heard and the mind of the Judge satisfied, both as to the law and the facts, before the writ can be issued." *Legg's case,* 41 Md. 223.

A demurrer confessing the facts of the petition will not dispense with the necessity of proof of the facts. *Legg's case, supra* ; *Sudler* v. *Lankford,* 82 Md. 142. When, therefore, the

answer averred as to the passage of the ordinance, "that he has no personal knowledge of, and, therefore, neither admits or denies the matters and things alleged," it was the legal duty of the appellant to prove these facts before he could be entitled to the issuing of the writ, and in refusing to do so, and by not obeying the order of the Court to prove these facts, he acted unlawfully, and the Court was bound to dismiss his petition.

Such an averment is perfectly proper in an answer to *mandamus.* How could a respondent possibly answer a fact of which he had no personal knowledge? He, under the law, has to answer *fully* under oath, the petition, and there is no other reply open to him, when he has no knowledge of a fact averred in the petition, than to say so. The legal consequences of such an averment is to compel the petitioner to prove the fact or facts which are thus not admitted. When, therefore, in the third and fifth paragraphs of answer, in reply to the averments of the petition that the ordinance in question was, originally and over the veto passed in due form, the appellee declares he has no personal knowledge, and neither admits nor denies the same, the appellant was then bound to prove that the ordinance had been passed in "due form." The Court below was, therefore, right in overruling the demurrer to these paragraphs for the above reason, if no other, and when the appellant refused to prove the facts thus not admitted by the answer, the Court was right in dismissing the petition.

The averment in fifth paragraph of answer responsive to this is : " Said proposed ordinance was not passed in accordance with the statute in such cases made and provided, *and did not receive the approval of three-fourths of the members of each branch of the City Council.*" It is to be noticed that the concluding words of the above paragraph of the answer are in exact words a denial of the similar affirmative words in the corresponding paragraph of the petition which precede the *videlicet* of "to-wit."

This denial in the answer of the statement preceding the

*videlicet* is, under every rule of pleading, a direct and un-
equivocal denial of the material part of the averment con-
tained in the clause where the *videlicet* occurs.    The office
of the *videlicet* in pleading is well known.    It is used to save
the pleader from a too rigid requirement of proof.    Words
when not laid under a *videlicet* if material, must be exactly
proven, while words laid under a *videlicet* need not be so
proven.    The *videlicet* is often made use of to relieve the
pleader of this requirement of proof.    The controlling state-
ment is always the clause which precedes the *videlicet*,
and if there is a repugnance between the two statements,
the statement laid under the *videlicet* must give way.    It
is then regarded as surplusage.    The denial may be of
both, but it is not necessary, if the clause not under *videlicet*
is denied, because the denial of the greater or larger class
includes the lesser or smaller class, just as a denial of the
genus would include a denial of each species included under
that genus, or, more logically stated, a denial of a whole
would include a denial of every part of that whole.    When,
therefore, in the answer, the appellee, responsive to the exact
words of petition, denied that the alleged ordinance received
the approval of "three-fourths of the members of each
branch of the City Council," it denied as to the first branch
the further averment of petition laid under the *videlicet*,
"to-wit, the affirmative vote in the first branch of fifteen
members, there being four votes in the negative, and three
members of said branch being absent."    1 *Chitty Pldg.* 326
(16th Am. ed.); *United States* v. *Quincy*, 6 Pet. 468 ; *Paine*
v. *Fox*, 16 Mass. 133.

The Court, in the first place, takes judicial notice that the
First Branch of the City Council is composed of *twenty-two
members.*    (Article 4, sections 3 and 17, P. L. L.)    In the
next place, the Court takes judicial notice that it requires
the approving vote of three-fourths of both branches to pass
an ordinance over the veto of the Mayor.    (Article 4, sec-
tion 13, P. L. L.)    The question whether this last provision
means three-fourths of *all* the members, or three-fourths of

those *present*, is not involved in this question   The appellee now, for the purpose of this point, takes the appellant's contention, which is that it takes three-fourths of the members present, and not three-fourths of all the members elected.

When, therefore, the petition averred that the ordinance in question was passed over the veto of the Mayor by " three-fourths of the *members* of each branch of the City Council," it could only mean, as to the first branch, three-fourths of twenty-two, which is seventeen and not fifteen, as averred in the clause under the *videlicet.* This repugnancy strikes down as we have seen the statement laid under the *videlicet.* The error in the *videlicet* is that there were not three members absent.   The affirmative and negative vote may be considered for the argument to be correctly given, and if the three who are in the *videlicet*, averred to be absent, were present, then all the *members* of the first branch would have been present, and it would be conceded by the appellant that it would have required seventeen votes, and not fifteen, to pass the ordinance over the veto of the Mayor.   Let this, however, be as it may, the averment of the petition is that the ordinance was passed over the veto by " *three-fourths of the members of each branch of the City Council,*" this can have but one meaning, there are twenty-two members of first branch, then the statement under the *videlicet*, and the answer flatly denies this averment.   With this as the state of the pleadings—a most material averment of the petition denied in the answer—it was the duty of the lower Court to overrule the demurrer and dismiss the petition on the refusal of the appellant to join issue and prove his averment that the ordinance was passed by a three-fourths vote of the *members* of each branch of the City Council."

The appellee in his answer, under his oath, flatly denies that the appellant was either in fact or law ever elected as City Collector.   Nothing indirect or evasive in this denial. Thus we have a square issue made upon the most important question in the case.   The Court directs the appellant to prove this averment made in his petition and denied in

the answer, before, under the law, the Court can see that his right to the office is *clear* and *unequivocal*, with a *correlative duty* on the part of the Mayor to administer the oath of office. The appellant in open Court puts, by his positive refusal to comply with this order, at defiance this proper mandate of the Court. Nothing then remains for the Court to do but to dismiss his petition, which is done.

RUSSUM, J., delivered the opinion of the Court.

On the 16th day of March, 1896, the appellant filed his petition, in the Superior Court of Baltimore City, for a *mandamus*, directed to the Honorable Alcaeus Hooper, Mayor of Baltimore, to compel him to administer to the petitioner the oath of office as City Collector, setting up the passage of an ordinance, over the veto of the Mayor, and the election of the petitioner to said position by the City Council, in pursuance of the provisions of such ordinance.

To that petition an answer was filed by the Mayor, in which he neither admitted nor denied some of the material averments of the petition, and denying the legality of the attempted action of the Council. To this answer the petitioner demurred, and, after argument, the demurrer was overruled and leave given to the petitioner to plead or traverse, and, upon his declining to do this, the Court dismissed his petition; from that order this appeal was taken. As it comes before this Court, the case does not in any way involve the merits of the controversy, but only technical questions of pleading. It is most unfortunate that in a case of this character, in which important public interests are involved, that this turn has been given to it, and the final determination of the cause upon its merits thereby delayed. The appellee first asks that this case be not heard at this term and contends that the appellant has no right to ask that it be so heard, claiming that the petitioner seeks to compel the performance of a mere ministerial duty, and that the title to an office is not involved. The Code, section 42, of Article 5, Public General Laws, provides for the

hearing of appeals by this Court, and in terms declares that in all cases where the title or right to a public office is involved the clerk of the Court in which it was heard shall forthwith transmit the original papers, and that this Court " shall immediately hear and determine the case." If then the right or title to a public office is " involved " in this proceeding, it is obligatory on this Court to hear and determine the cause without delay. The petition alleges that the relator was elected to the office of City Collector, and that he presented himself to the respondent, as Mayor of Baltimore, who alone was authorized under the law to administer the oath of office, and requested to be sworn in, but that his request was denied. The respondent denies the election of the petitioner and that the Council which attempted to elect him had any power so to do, and admits the allegation of the petition that the ground of the refusal to administer the oath was that he, the Mayor, did not regard the petitioner as legally elected. The real issue, therefore, is the legality of the election under which the relator claims. The Code of Public General Laws, section 5, of Article 70, makes the taking of the oath of office a qualification precedent, without which an individual cannot assume the duties, and while the act of administering the oath is a ministerial one so far as the Mayor is concerned, involving no exercise of discretion, it is essential to the induction into office. If the petitioner was duly elected, it was the duty of the Mayor to have administered the oath, and his refusal so to do would have inevitably raised the question of the right of the petitioner to the office of City Collector. This case, therefore, does involve the right or title to a public office, and is entitled to an immediate hearing and determination by this Court. *Code*, Art. 5, sec. 42.

The appellee further asks that the appeal be dismissed upon the ground that the order from which the appeal was taken was not a final order; but this motion must be overruled. While it is true that no bill of exceptions was taken at the hearing of the cause below, yet the test to be

applied in a case like this is whether the order of the Court from which the appeal was taken was in the nature of a final order. Much of the former strictness which applied to *mandamus* proceedings has been done away with, and they have been made to approach more nearly to other forms of actions. *Mandamus*, it is true, is a legal remedy, yet there has been a growing disposition to invest it with many of the rights and forms which apply to equitable actions—the intent and purpose of the Courts being to get at the real issue or merits of the controversy, rather than to deal with the particular form in which they were raised. Had the case been that of a bill in equity, with demurrer to the answer overruled and the bill dismissed, or of a declaration in an action at law, with a judgment for defendant, after demurrer to the pleas, there could be no question as to the right of the plaintiff to appeal. So in this case. The dismissal of the petition was, necessarily, a termination of the case, unless the right of appeal existed and an appeal was taken. No judgment that the Court could have rendered could have more effectually disposed of the case and the order of dismissal was, therefore, a final order, from which the appeal could be taken, and the motion to dismiss is therefore overruled. In the lower Court the case was tried on demurrer to the answer. The demurrer was overruled because, in the opinion of the learned Judge, "there are no admissions in the answer which show the facts in regard to the alleged passage" of the ordinance. It is undoubtedly true, as argued by the counsel for the appellant, that the answer is uncertain and evasive. While in a proceeding by way of *mandamus* against an individual he may aver that he has no personal knowledge of the facts alleged, and can therefore neither admit nor deny, as in the case of the *People* v. *Ryan*, 17 Mich. 159 ; yet, in the case of a public officer, and that officer the chief executive of a State or municipality, he is and ought to be officially chargeable with knowledge of the acts of the legislative branch of the government. It is a part of his duty to have such knowl-

edge. His personal presence in the halls of legislation is not the sole means of acquiring knowledge, nor indeed is it the ordinary means of acquiring it. It is his bounden duty to know the acts of the co-ordinate branch of the government, acts which will come before him for approval, and to know the disposition of them when they have failed to receive his approval, in order that he may, in obedience to his oath, properly discharge the duties of his office. In this respect the answer of the respondent in this case is un- candid and equivocal. It is argumentative where it should contain statements of facts, and is not such a full setting forth of the defences upon which he intends to rely as is required by section 3, of Article 60, of the Code. But the case being heard upon demurrer, the petition as well as the answer must be carefully scrutinized, and if any error is contained therein the effect of the demurrer to the answer is to mount up to the petition itself. *Commercial Bank* v. *Canal Commrs.*, 10 Wend. 26; *Poe's Pleading*, sec. 706, and cases cited in note 1.

The petition sets forth the passage of an ordinance, the veto of it by the Mayor, and the passage of the same over his veto, "receiving the affirmative vote of three-fourths of the members of each branch of the City Council." Then follows a *videlicet* giving the vote, which, in the first branch was fifteen members in the affirmative and four votes in the negative, and three members of said branch being absent. It is not necessary now to discuss what constitutes a branch, but it is clear that, if, as recited, the affirmative vote of three-fourths " of the members " was necessary for the passage over the veto, then the ordinance did not receive such vote; or if it did receive the vote of three-fourths of the members, then the statement of the vote as contained in the *videlicet* clause is wrong. The two are inconsistent and cannot be harmonized, nor can either be treated as sur- plusage. The petition was therefore defective on its face. In addition to this, the petition makes certain allegations of fact with respect to the passage of an ordinance of the

Mayor and City Council of Baltimore. Facts thus alleged should have been either admitted or denied. The answer with respect thereto was evasive, it is true, and to that extent was open to a motion to quash; but its language, " neither admits nor denies," is far from being an admission of the allegations of the petition, and, therefore, affirmative proof must be taken to support the allegations of the petition. *Legg* v. *Annapolis*, 42 Md. 222. The learned Judge below was, therefore, correct in overruling the demurrer and his order must be affirmed.

But though the ruling of the lower Court is affirmed, by section 20, of Article 5, of the Code, this Court is vested with the discretionary power, when in its judgment the ends of justice will be promoted, to remand a cause to the lower Court for trial upon its merits. This is manifestly a case for the exercise of that discretion. The merits of the controversy have never been passed upon by the Court, nor has the cause ever been in a condition that they could be passed upon, and not to remand it would be neither more nor less than a denial of justice. But, in remanding the cause it is proper to say that the questions involved are either those touching the passage or existence of an ordinance, or questions resulting directly therefrom, and therefore are questions which should be tried by the Court without the intervention of a jury. It is not every question of fact that is a question for the intervention of a jury. The passage and existence or non-existence of a statute or ordinance is a question of law, and though framed in form as an issue of fact, must, when it arises in the Courts, be decided by them on the evidence legally applicable thereto, without taking the advice of a jury on the subject. *Ottawa* v. *Perkins*, 94 U. S. 261 ; *Berry* v. *Drum Point R. R. Co.*, 41 Md. 464 ; *Legg* v. *Annapolis*, 42 Md. 224.

For these reasons the case will be remanded in order that it may be tried on its merits.

*Order affirmed and cause remanded.*

(Decided June 18th, 1896).